PER CURIAM.
Alabama Classic Homes, Inc., and Jim McBrayer, president of Alabama Classic Homes, appeal from a final judgment in favor of Wickes Lumber Company, Inc., on a contract dispute. In 1992, Wickes Lumber entered into a credit agreement with Alabama Classic Homes; Wickes Lumber also entered into a separate agreement with Jim McBrayer in which McBrayer personally guaranteed the Alabama Classic Homes account. In 1999, Alabama Classic Homes contracted to build a house for *887 Nannette Rainey. During the course of the construction of the house, Alabama Classic Homes obtained building materials on credit from Wickes Lumber. Between May 4, 1999, and July 22,1999, the materials purchased by Alabama Classic Homes on account from Wickes Lumber for the Rainey job totaled $27,266.29.
A dispute between Alabama Classic Homes and Rainey over “draws”[1] on the construction account halted construction on August 1, 1999. McBrayer allegedly told Rainey that no further work would be performed until she paid him for the work already completed. Alabama Classic Homes never completed the job.
Rainey sued Alabama Classic Homes and Wickes Lumber, alleging breach of contract, negligence, and fraud (case no. CV-99-788). Alabama Classic Homes claimed a materialmen’s lien against Rai-ney’s house.
Separately, Wickes Lumber sued Alabama Classic Homes and Rainey for failure to pay for building materials supplied to Alabama Classic Homes during construction of Rainey’s house (case no. CV-99-020). Alabama Classic Homes counterclaimed against Wickes Lumber for a breach of contract. Wickes Lumber then filed an amended complaint adding Jim McBrayer as a defendant, based upon the personal guaranty McBrayer signed as an inducement for Wickes Lumber to extend credit to Alabama Classic Homes.
The actions filed by Rainey and Wickes Lumber were consolidated for discovery purposes and for trial. A summary judgment was entered for Rainey on Wickes Lumber’s claim for a material-men’s lien, thereby resolving all issues against Rainey in the Wickes Lumber action (case no. CV-00-020). ‘Where several actions are ordered to be consolidated for trial, each action retains its separate identity and thus requires the entry of a separate judgment.” League v. McDonald, 355 So.2d 695, 697 (Ala.1978) (quoting Rule 42(a), Ala. R. Civ. P., and Committee Comments on 1973 Adoption, and Teague v. Motes, 57 Ala.App. 609, 330 So.2d 434 (1976)). Therefore, the judgment entered in the present case does not affect Rainey’s ongoing action (case no. CV-99-788), and Rainey is not a party to this appeal.
After Wickes Lumber filed its complaint, Alabama Classic Homes made the following payments on the dates indicated on its outstanding account with Wickes Lumber: $8,2115.42 on August 16, 1999; $3,000 on October 21, 1999; and $6,000 on December 1, 1999. After these payments were made, the balance owed on the account was $10,050.87. Alabama Classic Homes did not pay the balance, and, according to McBrayer, did not intend to pay until it collected money from Rainey for the construction work that had been completed before August 1, 1999. On January 16,1999, Wickes Lumber moved for a summary judgment against Alabama Classic Homes and McBrayer. On May 10, 2001, the trial court granted Wickes Lumber’s summary-judgment motion with respect to its contract claims against Alabama Classic Homes and McBrayer and awarded Wickes Lumber $25,254.54 in damages, representing the balance owed of $10,050.87, delinquency fees of $371.96, and expenses in the amount of $14,831.71 relating to the collection of the debt. The trial court also granted Wickes Lumber’s summary-judgment motion with respect to Alabama Classic Homes’ counterclaim *888 against Wickes Lumber. Alabama Classic Homes and McBrayer filed a motion to “reconsider,” which the trial court denied. Alabama Classic Homes and McBrayer appeal.
Review of a summary judgment is de novo, and this court applies the same standard the trial court applied. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). A motion for a summary judgment is appropriate when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. This court must view the evidence in a light most favorable to the nonmoving party and inust resolve all reasonable doubts against the moving party. Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
A party moving for a summary judgment must make a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the moving party meets this burden, the burden then shifts to the nonmoving party to show by substantial evidence that a genuine issue of material fact exists. Id. Substantial evidence means “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Alabama Classic Homes and McBrayer argue that the trial court erred in entering a summary judgment, because, they say, a genuine issue of material fact exists. Alabama Classic Homes alleges that Wickes Lumber delivered nonconforming goods to the Rainey job site, leading to the dispute between Alabama Classic Homes and Rainey; that Alabama Classic Homes reported the mistake to Wickes Lumber; that Wickes Lumber failed to cure the error; and that when Wickes Lumber did not cure the error, Alabama Classic Homes used the nonconforming goods in the Rainey construction project in order to mitigate their damages. Alabama Classic Homes asserts that the delays caused by waiting for the error to be corrected, then altering the plans and specifications of the construction to accommodate the nonconforming goods, caused it to lose the Rainey job and to suffer further economic damage. The primary support for these allegations is McBrayer’s sworn affidavit, and an invoice to Alabama Classic Homes from Wickes Lumber.
Wickes Lumber denies that it delivered nonconforming goods; it argues that McBrayer’s affidavit supporting the allegation that it delivered nonconforming goods contradicts McBrayer’s prior deposition testimony. McBrayer’s deposition was taken in December 1999, before Rainey’s action was consolidated with the action filed by Wickes Lumber. Wickes Lumber quotes the following deposition exchange in its brief in support of its summary-judgment motion:
“Q. Before August 1 [when the dispute over draws occurred], had you and Ms. Rainey had any problems with this construction?
“A. [McBrayer] You always have problems in construction.
“Q. I didn’t ask you that, Mr. McBrayer.
“A. I’m sure we did.
“Q. Can you tell me some of those problems, please?
“A. I don’t recall any specific problems.
“Q. You can’t recall any specifically, right?
*889 “A. I don’t know if there were any major problems.
“Q. But you can’t think of any, as you sit here today?
“A. No.
“Q. So as far as you know, the construction had been progressing, and the only problem that you could see at that point, was, maybe, some delays with getting the draws?
“A. Yes.
“Q. You can’t think of any other problems?
“A. No. There was some minor things.
“Q. You keep mentioning that, but you can’t tell me what they were.
“A. I mean, like, light switches being in the wrong places, stuff like that.
“Q. And when she would bring a problem to your attention, would you fix it?
“A. In due course, yes.”
Wickes Lumber argues that McBrayer’s testimony in this excerpt from his deposition contradicts McBrayer’s affidavit testimony that delays on the part of Wickes Lumber contributed to the dispute with Rainey. We do not agree. It is impossible to discern from the excerpt, or from the selected deposition pages included in the record on appeal, whether McBrayer was specifically questioned about delays caused by Wickes Lumber. In fact, the line of questioning upon which Wickes Lumber relies refers only to problems between Rainey and Aabama Classic Homes. Therefore, the trial court could have concluded that McBrayer’s sworn affidavit concerned issues beyond those discussed in the deposition, and that his affidavit, therefore, did not contradict his deposition testimony.
Aabama Classic Homes claims that part of the nonconforming materials was the nine-foot studding Wickes Lumber sent to the job site; Aabama Classic Homes claims it ordered eight-foot studding. Wickes Lumber asserts that a review of the invoices included in the record shows that no nine-foot studding was delivered. However, many of the invoices provided are illegible and contain abbreviations peculiar to the lumber trade. Based on the affidavits and other evidence presented, we are unable to determine from the record which party is correct as to this issue, and we conclude that there is a genuine issue of a material fact as to whether the lumber delivered by Wickes Lumber was nonconforming.
While we conclude that the record presents a genuine issue of material fact as to whether the goods in this case were nonconforming, we cannot say the same as to the issue of whether Aabama Classic Homes “rejected” those goods or “revoked acceptance” of those goods. A buyer who receives “nonconforming goods” may have the right to “reject” those goods pursuant to Aa.Code 1975, § 7-2-602, or to “revoke” acceptance of those goods pursuant to Aa.Code 1975, § 7-2-608. See also Aa.Code 1975, § 7-2-607(2). When a buyer neither rightfully rejects the goods nor rightfully revokes acceptance of the goods, the “buyer must pay at the contract rate for any goods accepted.” Aa.Code 1975, § 7-2-607(1). Based on our review of the record in the present case, we do not find substantial evidence indicating that Aabama Classic Homes either rejected or revoked acceptance of the goods in question. Because there was no genuine issue of material fact in this regard, we find no error in the trial court’s summary judgment in favor of Wickes Lumber and against Aabama Classic Homes on Wickes Lumber’s claim for payment for the goods.
With respect to the summary judgment in favor of Wickes Lumber as to the counterclaim of Aabama Classic Homes, how *890 ever, we must reverse. The remedies for nonconforming goods that have been accepted, and as to which that acceptance has not subsequently been rightfully revoked, include those remedies set out-in Ala.Code 1975, §§ 7-2-714 and -715, and such other portions of Alabama’s Uniform Commercial Code as may be applicable. These include the right to recover “the loss resulting in the ordinary course of events from the seller’s breach.” Ala.Code 1975, § 7-2-714(1). Because we find substantial evidence creating a genuine issue of material fact as to whether the goods in this case were or were not conforming, we therefore conclude that the summary judgment in favor of Wickes Lumber as to Alabama Classic Homes’s counterclaim was inappropriate.
With respect to the trial court’s consideration on remand of the counterclaim of Alabama Classic Homes, we further note that there also appears to be a genuine issue of material fact as to whether Alabama Classic Homes notified the seller, Wickes Lumber, of any nonconformity within a “reasonable time after [it] discovered] or should have discovered” such nonconformity; as required by Ala. Code 1975, § 7-2-607(3)(a) (barring remedies for nonconformity where such notification is not given within a reasonable time). See also Ala.Code 1975, § 7-2-714(1).' Wickes Lumber introduced the affidavit of Traci Dill, the manager of its credit department, in which Dill stated that she was not aware of receiving any notice from Alabama Classic Homes that the materials delivered were nonconforming. McBrayer stated in his affidavit, however, that Wickes Lumber “improperly and inappropriately shipped the wrong sized building materials to the job site” and that notice of that fact was given to Wickes Lumber. Because of the conflicting testimony with regard to this matter, we conclude that a genuine issue of a material fact is presented with respect to the issue of notice.
In light of the foregoing, we affirm the trial court’s summary judgment in favor of Wickes Lumber with respect to its contract claim against Alabama Classic Homes and McBrayer, individually. However, as to the trial court’s summary judgment in favor of Wickes Lumber on Alabama Classic Homes’ counterclaim, we reverse that judgment and remand the cause for further proceedings consistent with this opinion.[2]
Wickes Lumber’s request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
THOMPSON, J., concurs in the result.

. "Draws’’ are periodic payments disbursed by the homeowner to the contractor based upon the amount of work completed and the expenses incurred by the contractor at the time of the payment.

. We express no opinion as to whether, in the event of an award of money damages to Alabama Classic Homes on its counterclaim, a setoff would be appropriate with respect to money damages awarded to Wickes Lumber on its claim against Alabama Classic Homes.